WENTWORTH, Judge,
dissenting.
I would affirm appellant’s conviction, finding that the evidence was properly seized upon being discovered during a lawful inventory of the contents of appellant’s vehicle. I agree with the majority that there was legal authority for the impoundment of the vehicle, but I do not concur in the suggestion that such authority may only be derived from formal and express legislative pronouncement. And I disagree with the majority’s conclusion that the officers exceeded the scope of a permissible inventory when removing the false bottoms of the aerosol containers found in appellant’s tote bag.
In Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the United States Supreme Court delineated the requirements for opening sealed containers during an inventory of an impounded vehicle. Bertine approved the seizure of contraband discovered within containers found in a backpack in the impounded vehicle. The Bertine majority determined that the police could open the closed containers in accordance with a good faith implementation of standardized inventory procedures.
In State v. Wells, 539 So.2d 464 (Fla.1989), cert. granted — U.S. -, 109 S.Ct. 3183, 105 L.Ed.2d 692 (1989), the Florida Supreme Court applied Bertine to the inventory of a locked suitcase within an impounded vehicle. Wells relied heavily upon the concurring opinion in Bertine in disallowing the opening of the locked suitcase due to the record absence of a law enforcement policy mandating the opening of such containers in every impounded vehicle.
The record in the present case establishes that the contents of appellant’s vehicle were inventoried in accordance with a standardized procedure requiring such an inventory when a vehicle is impounded. Testimony was presented that when such an inventory is performed a list is made of personal effects found within the vehicle. When the officer observed the aerosol cans within appellant’s tote bag, he noticed that the bottom of one of the cans revealed what appeared to be signs of tampering. The officer’s action in then unscrewing the false bottoms of the cans was within the extent of his obligation to conduct a further inventory. As was recognized in Ber-tine, the police may need to ascertain the precise nature of property within an impounded vehicle so as to guard against claims of theft, vandalism, or negligence, and in order to better avert any danger which may be posed by the property. The inventory as to the contents of the containers in the present case was fully within the scope of these concerns.
*565 While Wells prohibited the opening of a locked suitcase absent “a policy specifically requiring the opening of closed containers,” the court noted that the “act of locking such a container ... creates a legally recognized zone of privacy inside that container.” The present case does not involve a locked container, or the heightened “zone of privacy” which Wells suggests thereby pertains.[1] I would not construe either Wells or Bertine as requiring any more express policy directive for full inventories than is involved in the present case. As this inventory was undertaken in accordance with a standardized policy requiring an inventory of all impounded vehicles, with a listing of personal effects contained therein, in the circumstances here presented it was appropriate for the officer to remove the false bottoms of the aerosol containers and ascertain the contents thereof. The contraband thus discovered was lawfully seized. I would therefore conclude that the court properly declined to suppress such evidence, and would affirm appellant’s conviction.

. A distinction between locked or sealed containers, and those which are merely closed, was also noted in State v. Abrams, 548 So.2d 820 (Fla. 2d DCA 1989), in which an issue was certified to the supreme court in regard to this distinction in the context of a consensual search.